## AFFIDAVIT IN SUPPORT OF AN APPLICATION

## FOR A SEIZURE WARRANT

I, James Barden, am an investigative or law enforcement officer of the United States, within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in 21 U.S.C. § 841 and 18 U.S.C. § 1955, 1956 and 371, among others.  Being first duly sworn, I hereby depose and state as follows:

## INTRODUCTION

1. This affidavit is in support of a seizure warrant for approximately 9.881 bitcoins (the "Subject Funds") that target of investigation Fernando Berrocal voluntarily surrendered to law enforcement on or about March 25, 2021.

## AGENT BACKGROUND

2. I am a Special Agent with Homeland Security Investigations ("HSI") and have been so employed since 2002.  I am currently assigned to the Cyber Crimes Squad of HSI's Houston Field Office.  I successfully completed New Agent Training at the HSI Academy in Brunswick, Georgia in 2002.  During that time, I received training in physical surveillance, legal statutes and procedures, financial investigations, money laundering techniques, asset identification, forfeiture and seizure, confidential source management, and electronic surveillance techniques.  Since joining HSI, I have investigated violations of federal law to include those related to criminal money laundering, financial fraud, and export violations.

3. As an HSI agent, I am authorized to investigate violations of federal law and execute warrants issued under the authority of the United States.  I have also received additional training and instruction in conducting investigations related to computer-related crimes, and have had the opportunity to conduct, coordinate, and participate in numerous investigations relating to computer-related crimes.  I have participated in the execution of numerous search warrants conducted by HSI and have participated in the seizure of computer systems.

4. This affidavit is submitted pursuant to Rule 41 of the Federal Rules of Criminal Procedure, and 18 U.S.C. §§ 98l(a)(l)(A) and (C), 981 (b)(l) and (2), 982(a)(l) and (b)(l), and 21 U.S.C. § 841 and 18 U.S.C. § 1955 for the issuance of a warrant (the "Seizure Warrant") to seize and forfeit the Subject Funds.

5. The facts and information contained in this affidavit are based upon my personal knowledge, as well as information from other law enforcement officers involved in this investigation.  Statements made by witnesses and other individuals referenced in this affidavit have been paraphrased.  While this affidavit does not contain every piece of evidence discovered to date, it does not omit evidence that would defeat the probable cause established herein.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to seize the Subject Funds described above.

## LEGAL AUTHORITY FOR SEIZURE

7. Title 18 U.S.C. §§ 981(a)(l)(C) and (b) provide for the criminal and civil forfeiture of any property which constitutes or is derived from proceeds traceable to violations of 21 U.S.C. § 841 (Distribution of Controlled Substances) and 18 U.S.C. § 1955 (Operation of an Illegal Gambling Business), and any personal property that was used or intended to be used to commit or to facilitate the commission of such violations.

8. Title 18 U.S.C. §§ 98l(a)(l)(A) and 982(a)(l) provide for the criminal and civil forfeiture of any property, real or personal, "involved in" a violation of 18 U.S.C. § 1956 (Money Laundering), or any property traceable to such property.

9. 18 U.S.C. § 981(b) provides for the seizure of property subject to civil forfeiture. 18 U.S.C. § 981(b)(3) further provides:

> Notwithstanding the provisions of Rule 41(a) of the Federal Rules of Criminal Procedure, a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against the property may be filed under section 1355(b) of Title 28, and may be executed in any district in which the property is found or transmitted to the central authority of any foreign state for service in accordance with any treaty or other international agreement.  Any motion for the return of property seized under this section shall be filed in the district court in which the seizure warrant was issued or in the district court for the district in which the property was seized.

10. Title 18 U.S.C. § 371, makes it a crime for two or more persons to conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy.

11. Title 18 U.S.C. § 1956(a)(1), makes it a crime to engage or attempt to engage in a financial transaction with the proceeds of a specified unlawful activity: (1) with the intent to promote the carrying on of a specified unlawful activity; (2) with the intent to evade taxes; (3) knowing the transaction is designed, in whole or in part, to conceal or disguise the source, origin, nature, ownership, or control of the proceeds; or (4) knowing the transaction is designed, in whole or in part, to avoid a transaction reporting requirement.

12. Title 18 U.S.C. § 1956(h) makes it a crime to conspire to commit any of the offenses set forth in 18 U.S.C. § 1956.

13.     One of the chief goals of forfeiture is to remove the profit from crime by separating the criminal from his or her dishonest gains.  See United States v. Newman, 659 F.3d 1235, 1242 (9th Cir. 2011); United States v. Casey, 444 F.3d 1071, 1073 (9th Cir. 2006).  To that end, if property appreciates in value or earns interest, any appreciation or interest is also subject to forfeiture.  See United States v. Betancourt, 422 F.3d 240,250 (5th Cir. 2005); United States v. Hawkey, 148 F.3d 920,928 (8th Cir. 1998).

## DEFINITIONS

14.     I know from my training and experience as a Special Agent with HSI that the following definitions apply to the activity discussed in this affidavit:

15.     **Bitcoin**:  Bitcoin is a type of virtual currency circulated over the Internet.  Bitcoin, also referred to as a digital currency or a cryptocurrency, is the best-known and most widely circulated type of virtual currency.  Bitcoin is not issued by any government, bank, or company, but rather is generated and controlled through a computer software protocol that resides and operates via a decentralized, peer-to-peer computer network on the Internet.  Bitcoin is also a "convertible" type of virtual currency as it has value in, and can act as a substitute for, "real" or traditional currency and can be used as a medium of exchange. [1]

16.     **Bitcoin Address**:  A Bitcoin address denotes the unique virtual source or destination of a bitcoin transfer.  A Bitcoin address is akin to a real-life address or traditional bank account number but is represented as a 26-to-35-character-long, case-sensitive string of letters and numbers.

---

[1.] Since Bitcoin is both a virtual currency and a computer software protocol, capitalization differs.  Accepted practice is to use "Bitcoin" (singular with an uppercase letter B) to denote the computer software protocol and "bitcoin" (with a lowercase letter b) or the common abbreviation "BTC", to denote units of virtual currency. This practice is adopted herein.

**FACTS SUPPORTING PROBABLE CAUSE**

A.     **BACKGROUND**

17. Beginning in approximately May 2019 and continuing through and up to at least approximately February, 2021, target of investigation Fernando BERROCAL (BERROCAL) did knowingly, willfully, and unlawfully conspire with, work for and or act on behalf of individuals and organizations, directly and indirectly, to collect, transfer and launder criminally derived monetary instruments – United States currency – with the intent to promote the carrying on of specified unlawful activity, to wit: illegal gambling, narcotics trafficking and various financial frauds, in violation of the following: Title 18 U.S.C. § 1084 (Wire Wager Act); Title 18 U.S.C. § 1955 (Operation of an Illegal Gambling Business) and illegal gambling statues of the States of California, Nevada, New York, New Jersey and Texas; Title 21 U.S.C. § 841 and 846 (Distribution of Controlled Substances and Conspiracy); Title 18 U.S.C. § 1960 (Unlawful Money Transmitters); Title 18 U.S.C. § 1956 and 1957 (Money Laundering); Title 18 U.S.C. § 2314 (Transportation, Transmission or Transfer of Money Obtained by Fraud); Title 18 U.S.C. § 1341, 1342 and 1343 (Mail & Wire Fraud); Title 18 U.S.C. § 1349 (Conspiracy to Commit Mail Fraud) and Title 18 U.S.C. § 371 (Conspiracy).

18. From at least in or about May 2019 up to and including February 2021 several HSI Undercover Special Agents (UCAs) communicated and met with BERROCAL, and others at BERROCALs direction, to pick-up and launder United States currency that BERROCAL and others he worked with and for, knew to be proceeds generated by illegal gambling and or narcotics trafficking.

19. During this time, BERROCAL caused, conducted, coordinated, and or oversaw pick-ups of bulk United States currency (bulk cash) from various domestic and international locations.  The bulk cash pick-ups BERROCAL conducted, coordinated and oversaw totaled approximately $2.3 million dollars; $1 million in illegal gambling proceeds and $1.3 million in narcotics proceeds.

20. Analysis of financial records associated with BERROCAL also revealed that, between approximately April 2019 and December 2020, approximately $1,789,628.40 in proceeds generated by various financial frauds, many targeting elderly U.S. residents, had been credited to and transferred out of accounts owned and/or controlled, in whole or part, by BERROCAL.

21. BERROCAL retained or was paid a fee or money laundering "points" (ill-gotten gains) – typically ten or eleven percent of the total amount of money picked-up, received, transferred and/or laundered – by the individuals and organizations for whom he worked and or acted on behalf of, each time he directly or indirectly engaged in the criminal activities described herein.

22. From at least in or about May 2019 up to and including February 2021, BERROCAL established, used and or controlled multiple commercial and personal bank accounts and shell-companies in the United States and elsewhere in furtherance of laundering and moving criminally derived proceeds.

23. During this same period, BERROCAL also established, used and or controlled multiple virtual currency accounts and/or Bitcoin addresses in furtherance of laundering and moving criminally derived proceeds.

24. BERROCAL utilized these Bitcoin addresses, commercial and personal bank accounts, and shell-companies to support and carry out traditional and trade-based money laundering schemes involving proceeds generated by illegal gambling and or narcotics trafficking, and or various financial frauds.

25. BERROCAL conducted numerous financial transactions, many involving virtual currency, specifically bitcoin, to launder and transfer criminally derived proceeds from the United States to individuals and organizations outside the United States.

26. On multiple occasions BERROCAL converted, or directed others to convert, cash proceeds generated by illegal gambling and/or narcotics trafficking, into equivalent sums of bitcoin.

27. BERROCAL then caused these and other sums of illicitly obtained bitcoin to be transferred to Bitcoin addresses controlled by BERROCAL, and, or his co-conspirators.

28. Using portions of his ill-gotten gains, BERROCAL was known to have purchased additional amounts of bitcoin in furtherance of his criminal activities, and as an investment vehicle designed to increase his own personal wealth.

29. On January 8, 2021, during a recorded conversation with an HSI UCA, BERROCAL said he had invested nearly all his "perfume money" in bitcoin.

30. Special Agents determined that BERROCAL was using Bitcoin address 1JDxYqB8DuysN2gZaNWThETpmhoDsRZDEF (the "Subject Address") to receive, transfer and store illicitly obtained bitcoin, including the Subject Funds.

31. Though BERROCAL purported to be in the perfume business, and was known to have routinely purchased, exported and resold wholesale commercial quantities of perfume, BERROCAL's perfume-related business activities were, in whole or part, designed and conducted to facilitate a trade-based money laundering scheme BERROCAL used to launder and move criminally derived proceeds.

32. From at least in or about May 2019 and up to and including the date of this application, BERROCAL was not known to have been employed by or engaged in any legitimate business or trade-related activities.

33. During this period, BERROCAL's primary source of income derived from and relied on the criminal conduct described herein.

34. In March 2021, during a consensual interview with law enforcement, BERROCAL admitted that the Subject Funds constituted proceeds derived from his criminal activity.

35. BERROCAL subsequently agreed to and did voluntarily surrender the Subject Funds to law enforcement.

36. Special Agents administratively seized the Subject Funds on or about March 25, 2021.

37. The Subject Funds remain in a government-controlled Bitcoin wallet for safe keeping pending judicial action.

38. Control, administration of and access to the Bitcoin wallet containing the Subject Funds is restricted to and resides with an HSI Seized Property Custodian at a location within the Southern District of Texas.

## CONCLUSION

39. Based on the investigation to date, my training and experience, and my consultations with other Special Agents with whom I work, I have probable cause to believe that the aforementioned property may be seized pursuant to 18 U.S.C. §§ 98l(a)(l)(A) and (C), 981(6)(1) and (2), 982(a)(l) and (6)(1), 18 U.S.C. §§ 1955 and 21 U.S.C. §§ 841.

I declare under the penalty that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted,

_____
James Barden
Special Agent
Homeland Security Investigations